# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA, SOUTHERN DIVISION

-----------------------------------------------X
|                           |   |                              |
|---------------------------|---|------------------------------|
| **KEITH WARD,**           | X |                              |
|    Plaintiff, | X | **CIVIL ACTION COMPLAINT** |
|                           | X |                              |
|    vs.     | X | **JURY TRIAL DEMANDED**      |
|                           | X |                              |
| **AUTOZONERS LLC.**       | X |                              |
|    Defendant. | X |                           |

-----------------------------------------------X

Plaintiff, Keith Ward, by and through his undersigned counsel, complains as follows:

## NATURE OF THE CLAIMS

1. Plaintiff brings claims for a hostile work environment, sexual harassment, constructive discharge and retaliation pursuant to Title VII of the Civil Rights Act of 1964, as amended in 1991, 42 U.S.C. §2000e, et seq. ("Title VII"), and an intentional infliction of emotional distress pursuant to state law.

## PARTIES AND JURISDICTION

2. At all relevant times, Plaintiff Keith Ward, has been a citizen and resident of Columbus County, North Carolina.

3. At all relevant times, Plaintiff Keith Ward worked as a delivery truck driver for Defendant Autozoners LLC.

4. Defendant Autozoners LLC ("Autozone") is a Nevada limited liability company, with its principal office in Tennessee. AutoZone is a publicly traded national retailer and distributor of automotive parts.

5. At all relevant times, Defendant maintained AutoZone stores and employed individuals throughout the State of North Carolina, and more particularly, in Columbus County, North

Carolina.

6. AutoZone is an employer within the meaning of Title VII.

7. This Court has jurisdiction pursuant to 28 U.S.C. Sec. 1343. Venue is proper in this District pursuant to Title VII's venue provision, in that the majority of the conduct complained of herein took place within the Eastern District of North Carolina and the Defendant can be found here. This Court has jurisdiction pursuant to 28 U.S.C. Sec. 1367 over Plaintiff's state law claim.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8. On or about December 31, 2013, Plaintiff filed a Charge of Discrimination against AutoZone with the North Carolina District Office of the United States Equal Employment Opportunity Commission ("EEOC").

9. On or about November 8, 2014, the EEOC issued a Probable Cause determination, finding that Plaintiff had been subjected to a hostile work environment and that he had been constructively discharged.

10. On or about June 5, 2015, Plaintiff received a copy of a Notice of Right to Sue.

11. This lawsuit has been timely filed within 90 days of Plaintiff's receipt of the EEOC's Right to Sue notice.

## FACTUAL ALLEGATIONS

12. AutoZone hired Mr. Ward as a delivery truck driver to work at Store 1260, in Whiteville, North Carolina, in September 2012.

13. In March 2013, AutoZone hired Christina Atkinson as a sales clerk in the "Do it Yourself" ("DIY") section of Store 1260. Shortly thereafter, she became a driver.

14. Almost immediately, Ms. Atkinson began sexually harassing Mr. Ward.

15. The sexual harassment was constant, initially occurring several times per week, soon escalating to several times per day when Mr. Ward and Ms. Atkinson were in the store together.

16. The harassment was both physical and verbal, and occurred despite Mr. Ward's opposition. The

harassment occurred openly, in front of coworkers and supervisors, and despite numerous complaints to supervisors and managers. In fact, Ms. Atkinson sexually harassed an Assistant Manager, so AutoZone was well aware of the problem, from the beginning.

17. By way of example only, on or about March 15, 2013, Mr. Ward was at a work station speaking to a customer by phone. Ms. Atkinson walked past him, and dragged her hand across his buttocks.

18. Just days later, as Mr. Ward walked by Ms. Atkinson, she reached out and grabbed his left nipple, pinching it so hard that she left a bruise roughly the size of a quarter. Mr. Ward told her to keep her hands off him.

19. She ignored him. Her physically aggressive and inappropriate behavior worsened.

20. Approximately one week later, Mr. Ward was standing behind the work counter when Ms. Atkinson walked by. He turned sideways to allow room for her to pass without touching him. Ms. Atkinson intentionally walked as close to him as she could, dragging her hand across the front of his pants, touching his penis as she walked by. While touching him, Ms. Atkinson groaned "Ooh." Mr. Ward told her to "stop it" and to keep her hands off him.

21. Over the next several weeks, Ms. Atkinson touched Plaintiff at least once or twice a week, despite the fact that each time she did so, Mr. Ward told her to stop.

22. In or around late March/early April 2013, Mr. Ward complained to his direct supervisor, Wanda Smith, Manager of Commercial Sales at the store. Mr. Ward explained to Smith that Ms. Atkinson had been pinching his nipples and rubbing her hand across his crotch. He told Ms. Smith that Ms. Atkinson had done this on multiple occasions, and that "this was not the first time she felt my ass," and asked Ms. Smith to tell Ms. Atkinson to keep her hands off him.

23. Only days later, Ms. Atkinson grabbed both of Mr. Ward's nipples while he was walking by her, and twisted them, bruising them again.

24. Ms. Atkinson continued sexually harassing Mr. Ward, the nature of which escalated as time passed.

25. On a near daily basis, Ms. Atkinson rubbed against Mr. Ward, touched his buttocks, grabbed, pinched, and/or twisted his nipples, and/or otherwise invaded his personal space. Her assaults increased to the point that she groped him every time they worked together.

26. Ms. Atkinson made comments when she touched him, saying things like, "You must've liked it because your nipples are hard," and "You know you liked it," or, "You've really got a firm butt. Most guys your age don't have such a tight ass."

27. Mr. Ward frequently reported the harassment, yet it continued.

28. Mr. Ward tried to avoid her and protect himself by hiding in an aisle when Ms. Atkinson came into the store.

29. In or around May 2013, Lane Buffkin, who had been working as a full-time truck driver, quit AutoZone. Believing he would have less exposure to Atkinson's harassment in another position, Mr. Ward asked Ms. Smith to be considered for the position Mr. Buffkin vacated.

30. Ms. Smith laughed and told Mr. Ward that he would not be considered because he "complained too much." Mr. Ward responded that he had only ever complained about Ms. Atkinson's touching and lewd comments.

31. In retaliation for his complaints about sexual harassment, AutoZone did not place Mr. Ward in the driver position, for which he was qualified.

32. In addition to her physical assaults, throughout their employment, Ms. Atkinson also regularly made lewd and inappropriate sexual remarks and jokes while at work to Mr. Ward. By way of example only, Ms. Atkinson loudly described how she used to work as a stripper, talked about having sexual relations, such as recounting that her boyfriend told her, "'you know you've been sucking my dick for like three hours,'" and invited Mr. Ward to put his hand in her pocket, while saying, "I got a hole in my pocket and I'm not wearing underwear."

33. Ms. Atkinson made these types of sexual remarks to Mr. Ward at least every day they worked together.

34. Ms. Atkinson's conduct was well-known. One AutoZone customer, who ran a body shop to which Ms. Atkinson made deliveries, was so mortified by Ms. Atkinson's comments in front of her shop's staff that the customer apologized to her employees for Ms. Atkinson's offensive sexual conduct.

35. In July 2013, Mr. Ward complained to William Shawn Buffkin, Assistant Manager of the DIY section at AutoZone, about the sexual harassment. Mr. Buffkin acknowledged to Mr. Ward that Ms. Atkinson had also pinched his own nipples and confirmed that he had heard Mr. Ward complain to Ms. Smith about the harassment.

36. Mr. Buffkin described Ms. Atkinson's sexual harassment and Mr. Ward's complaints:

> Keith Ward: Okay. Uh, were you aware through discussions of between my, myself and yourself, were you aware that Christina Atkinson was putting her hands on me inappropriately at the store in Auto Zone while I work there?
>
> William Shawn Buffkin: Yes sir.
>
> Keith Ward: And, uh, were you aware that this was happening early on, I meant just almost, did it started happening, almost as soon as you started working there?
>
> William Shawn Buffkin: Yes sir.
>
> Keith Ward: Okay and did you overhear me, uh, telling, uh, my boss, the commercial manager Wanda Smith one day, uh, and this was a couple of months or so before you, before you actually left Auto Zone but did you hear me over telling her, cut in a conversation complaining to her about Christina putting her hands on me and asking her to make Christina stop?
>
> William Shawn Buffkin: Yes sir.
>
> Keith Ward: Tell me exactly what you heard if you can in your words.
>
> William Shawn Buffkin: I will. I can't remember the exact words but the gist of the conversation was along the lines of the, uh, we were, we were actually, I was leaving the office area and you, and you and she were back there. You all just step back there and you told her, you said that, uh, Christina was, was being a little too out of hand with her, her jokes or sexual jokes and her physical contact with you and, uh, Wanda had, Wanda's reply to that was actually, you know, "Don't worry I'll take care of it.," you know, along those lines was that she would take care of it and make it stop happening.
>
> Keith Ward: But I did, I did complain and was complaining to her about her putting her hands on me. Did, did you hear that part?
>
> William Shawn Buffkin: Yes sir.
>
> Keith Ward: Okay and, uh, I want to ask you one other thing. Ah, it's embarrassing to me and I know it's kind of embarrassing to you but you and I talked about this before hand and did, did Christina ever, did Christina ever put her hands on you inappropriately?

William Shawn Buffkin: Yes sir. Uh, the way that she joked and, and carried on with people was, was inappropriate for a work place.

Keith Ward: Well she, she done a lot, she told a lot of off color jokes and, and, and she told a lot of vulgar jokes and she told a lot of jokes that shouldn't have been told.

William Shawn Buffkin: Mmhmm.

Keith Ward: You know, but she also, her language was inappropriate, uh, and her, and her touching was inappropriate. I mean don't you agree with me?

William Shawn Buffkin: Yes sir.

Keith Ward: Uh, I know that she put her hands, she rubbed up against the front of my pants, uh, and she actually pinched my nipples and stuff and I know one day at the store, you and I talked about it but did she pinched on your nipples or twist your nipples also?

William Shawn Buffkin: Yes sir.

Keith Ward: Okay and, uh, it was not an isolated incident. She'd done it, I meant she'd done it whenever she might like she could get away with it didn't she?

William Shawn Buffkin: Yes sir.

37. Mr. Ward continued complaining to Ms. Smith as Ms. Atkinson's behavior escalated.

38. Mr. Ward complained to then-store general manager Wayne Tarkenton several times prior to Mr.

    Tarkenton's discharge in July 2013.

39. Mr. Tarkenton acknowledged Plaintiff's complaints:

    Keith Ward Okay. Uhm. You're well aware of the fact that uh, Christina Atkinson was putting hands on me inappropriately to the store and you, and I had talked with you about this. Is that correct?

    Wayne Tarkenton: Yes you had and all of it, yes you have.

40. Mr. Tarkenton further describes Mr. Ward's complaints:

    As Store Manager, I wasn't Keith's immediate supervisor. Keith made me aware of the sexual harassment in early July 2013. He informed me that his female co-worker, Christina Atkinson, who was hired April 2013, had been making very aggressive sexual comments and gestures toward him since she started in April. He also informed me he had repeatedly reported and complained to his immediate supervisor Wanda Smith, without remedy.

    When Mr. Ward came to me in July, I told him I'd speak to harasser Atkinson immediately. I told her I'd had a complaint from Mr. Ward that she was grabbing at his crotch and nipples, and making rude sexual comments to him, and I wanted it to cease immediately. If this behavior didn't stop, I informed her I'd go to upper management. Harasser Atkinson denied the sexual harassment, but I did not believe her and let her know this was a verbal warning, and her offensive behavior towards Mr. Ward had better stop immediately.

    I thought after my warning to her the matter would be taken care of. However, AutoZone

terminated me within a few weeks late July 2013....

A few years back, I had a male employee sexually harassing a female employee and I recall the company seemed to take it more seriously than a female harassing a male.

It just wasn't dealt with properly or at all.

I know the harassment continued after I left AutoZone, because I was in touch with Mr. Ward and he told me it did.

See W. Tarkenton Declaration, attached as Exhibit A.

41. In or around late July 2013, Mr. Ward requested a copy of the Company's sexual harassment policy from the new Store Manager, Lawrence McCall.

42. In late July, Mr. Ward left for vacation. On Mr. Ward's first day back, August 15, 2013, Ms. Atkinson grabbed him by his right nipple and twisted it so hard that he quickly developed a bruise. Mr. Ward told her to keep her hands off of him. Ignoring him, Ms. Atkinson continued assaulting him, grabbing him by the arms and pushing him up against a shelf, where she pressed her head up against his chest, and began rubbing his nipple. As Ms. Atkinson did this, she said, "I'm sorry, I'm just so used to doing that to my boys." Mr. Ward pulled away.

43. Immediately after Ms. Atkinson's August 15 assault, Mr. Ward went to Ms. Smith and Mr. McCall, and requested a meeting. Mr. Ward complained about the incident that just transpired, as well as all the rest of Ms. Atkinson's sexual harassment over the prior several months:

Keith Ward: ... I've got a problem, it's not going away and ...I want Lawrence to know about it. I've told Wanda about it. You've got a female employee in this store who can't keep her hands to herself. I'm sick and tired of getting felt up and that's one of the reasons I asked you 3 weeks ago for a book on the employee hand manual about sexual harassment ...

Lawrence McCall: and that's why I gave you the handbook and asked you if …

Ward: and ... [Wanda] knows what I'm talking about. I mean I've complained … have I not complained to you about this?

Wanda Smith: Yes, I think you did yeah.

Keith Ward: I've complained to you about Christina putting her hands on me. Several times. I complained to Wayne and now here. She has... Here's the extent of this thing. Uhh she has pinched my nipples and twisted my nipples 'til I've had bruised spots on. It's bigger bigger than a quarter. She's felt on them. She'd pats you on the A double S or she's patted me on the A double S and I'm sick and tired of it. She's felt of it and I've told Wanda, she said ooh you got a nice butt. And most guys, old guys your age don't have a

good firm butt like you got and she's even reached around up front and it's not only happening to me. It's happening to the other male employees in this store too. Thomas … I talked with Thomas three weeks ago about it and Thomas said he thought she just have a nipple fetish but she talks with him about it.

She talks inappropriately about things in the store. I mean cutting a fool is one thing but now I've never put my hands and even ask Wanda, I've never put my hands on Wanda, I've never done anything inappropriate with her or Cathy or any of the girls in this store and they've never put their hands on me inappropriately. And from almost from the day she got here, she has felt like she just had the right to put her hands all over the male employees and I'm sick and tired of it.

McCall: Hmmm, well I haven't seen her doing anything out of the way but uh...

Ward: Well I'm surprised she ain't done you. ...Wanda knows … just like I said, I probably complained to her a half a dozen times.

Wanda Smith: You can always come to me and tell me if she's being ...

Keith Ward: Who did?

Laurence McCall: Has anybody said anything to her?

Wanda Smith: I don't know if Wayne did or not.

Keith Ward: The other day before Wayne left, Wayne was leaned up against counter one day and she run her hand around his privates in front. I mean me standing right there and done it. He jumped back from the girl, he jumped back from the counter, he said girl are you crazy? Then he makes an off the wall comment and he says, somebody needs to take her behind the building or something. I said no, what she needs to do is learn to keep her hands off people, and I can't work here like this. I'm sick of it. I've been gone three weeks and it's so nice not having to come in here worry about it. I come back today and I get feel up today and I'm just tired of it.

Laurence McCall: What did she do today?

Keith Ward: She reached up there and grabbed me by the nipple and I told her I said I've told you to keep your hands off of me and she turns around me and puts her hand, jams me up against the counter. Pressed her hand on my chest there and starts patting me there with the other hand right on the nipple. She says I'm sorry. She said I'm just used to doing this to my boys. Now I don't know what her boys are, if she's talking about her children or who but I don't care. I ain't one of her boys. My commercial customer out on the field complained about her going in talking inappropriately in front of their employees and one thing and another and I'm just … it's awful.

McCall: Well, I'm ...

Ward: ... I'm just sick and tired of it and I can't work here like that. If you want me to work tomorrow, I'll work tomorrow but other than that, I'm turning it in. I'm done. Y'all got to do something. I'm through. …..

***

Wanda Smith: I thought she'd actually quit.

44. Mr. McCall tried to simply have Ms. Atkinson moved to a different part of the store, but did not

suggest terminating or disciplining her:

Keith Ward: Well let me tell you something, I come out here because I've done everything, I've done everything. I've worked when they call me. I never but one time, I was gone fishing and I knew that we're going to be shorthanded. I've come in every time they've ever called me and asked me to come in early on my days off. I've bent over backwards. But I'm burned out now. I've reach my wit's end. And I'm done …

Laurence McCall: So are you quitting? Is that what you're telling us?

Keith Ward: I'm not going to work here like this. You do what you want to do. You tell me …

Laurence McCall: You're not giving me time to address the issue. You can't come to me now and tell me to fix it tomorrow. *All I can do is have Wanda speak to her and …*

Keith Ward: Well I don't want her out here anymore bugging me about this crap. If I work tomorrow, I don't want her out here about this job. I don't want to deal with this.

…

Wanda Smith: She'd be in the front counter tomorrow.

Keith Ward: Front counter? Being on the front counter don't keep her hands to herself. That's the problem.

Laurence McCall: The 11:00 – 3:00 shift has to cover Amie's lunch, your lunch, Kathy's lunch and Kaye's lunch. That's her 4 hours.

Keith Ward: She done yesterday when she was just … she was 3-foot … standing 3-foot from me when she done yesterday. You don't hear me when I talk to you about keeping her hands off of me?

Wanda Smith: See I don't because I get back and I have my own little world.

…

45. Despite that Mr. Ward had been complaining for months, Mr. McCall claimed to need time to investigate but refused to take even temporary measures to allow Mr. Ward to work without enduring any more harassment.

46. On August 16, 2013 Mr. Ward returned to the store to find that Ms. Atkinson would be working in the store that day, despite Ward's complaints and AutoZone's knowledge of his complaints.

47. By failing and refusing to deal with Ms. Atkinson's harassment, and thereby allowing an intolerable situation to exist and persist, AutoZone constructively discharge Mr. Ward.

48. As Mr. Ward left the store, Ms. Atkinson approached him and stated, "I just heard you quit. Come let me get a hug before you leave." Mr. Ward told her to, "get away from me, don't touch me."

49. The harassment, retaliation and constructive discharge caused Mr. Ward to suffer severe

emotional distress, including chest pains when leaving AutoZone.

50. Later on August 16, AutoZone District Manager Ken Geer contacted Mr. Ward to meet the following Monday, which they did. In his resignation letter, Mr. Ward noted that Geer indicated he might move Ms. Atkinson to another store, allowing Plaintiff to return to work without fear of harassment. However, when they met, Mr. Geer did not offer to move Ms. Atkinson, and instead repeatedly told Mr. Ward that the "situation" was entirely Mr. Ward's fault because he had not directly complained to Mr. Geer personally, even though AutoZone had never trained Mr. Ward to do so and AutoZone's policies did not require him to do so.

51. A few weeks after Mr. Ward's constructive discharge, he received a letter asking him to complete a written exit interview. Mr. Ward explained again that Ms. Atkinson sexually harassed him, he complained for months, and nothing was done. He asked to be contacted by the owner of AutoZone.

52. Plaintiff never heard from the Defendant.

## Count One

### Sexual Harassment in Violation of Title VII of the Civil Rights Act of 1964

53. Plaintiff incorporates all preceding paragraphs.

54. Defendant engaged in illegal discrimination on the basis of sex, by creating a sexually hostile work environment.

55. Defendants condoned the sexual harassment by failing to take adequate remedial action.

56. As a consequence of Defendants' conduct, plaintiff suffered severe emotional distress.

57. Defendants' actions proximately caused Plaintiff's injuries.

## Count Two

## Constructive Discharge
## In Violation of Title VII

58. Plaintiff incorporates all preceding paragraphs.

59. As a result of Defendant's conduct Plaintiff was subjected to discriminatory working conditions that were so intolerable that he was forced to resign from his position.

60. As a consequence of Defendant's conduct, Plaintiff suffered severe emotional distress.

61. Defendant's actions proximately caused Plaintiff's injuries.

## Count III

## Retaliation in Violation of

## Title VII of the Civil Rights Act of 1964

62. Plaintiff incorporates all preceding paragraphs.

63. Plaintiff engaged in protected activity when he complained about harassment. Defendant had knowledge of his protected activity. As a consequence of his protected activity, AutoZone retaliated against Plaintiff, by inter alia, refusing to place him in a full time position, which he requested to prevent further harassment.

64. Defendant's conduct caused Plaintiff severe emotional distress.

65. Defendant had actual knowledge of the outrageous acts.

## Count IV

## Intentional Infliction of Emotional Distress

66. Plaintiff incorporates all preceding paragraphs.

67. Defendant engaged in extreme and outrageous conduct towards Plaintiff, by knowingly permitting a sexually hostile work environment.

68. Defendant intended to cause emotional distress or recklessly disregarded whether its conduct would cause emotional distress.

69. Defendant's conduct caused Plaintiff severe emotional distress.

## JURY DEMAND

Plaintiff herein demands a trial by jury for all issues in this action.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests:

a. Judgment against defendants for violations of 42 USC §§ 2000e-3, 2000e-5;

b. Lost wages;

c. Compensatory damages for emotional distress;

d. Punitive damages;

e. An award of prejudgment interest;

f. All costs and attorneys' fees incurred prosecuting these claims; and

g. For such further relief as the Court deems just and equitable.

Dated: August 5, 2015

Law Offices of Joshua Friedman

 _/s/ Rebecca Houlding_
Joshua Friedman
Rebecca Houlding
1050 Seven Oaks Lane
Mamaroneck, NY 10543
Tel 212.308.4338
Fax 866.731.5553

Attorneys for Plaintiff by Special Appearance

Winslow Wetsch, PLLC

 _/s/ Laura J. Wetsch_

Laura J. Wetsch
416 Morson Street
Raleigh, NC 27601
lwetsch@winslow-wetsch.com
Tel 919-834-6534
Fax 919-834-6536
N.C. State Bar No. 19491
LR 83.1 counsel for Plaintiff