IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:15-CV-164-FL

| | | |
|---|---|---|
| KEITH WARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| AUTOZONERS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on defendant's motion for partial summary judgment, made pursuant to Federal Rule of Civil Procedure 56. (DE 28). In this posture, the issues raised are ripe for ruling. For the reasons that follow, defendant's motion is denied in part and granted in part.

**STATEMENT OF THE CASE**

Plaintiff initiated this action on August 6, 2015, asserting claims against defendant for retaliation, constructive discharge, and hostile work environment, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq. Plaintiff also asserts against defendant a state law claim for intentional infliction of emotional distress.

Prior to commencement of this action, on December 31, 2013, plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"). On or around November 8, 2014, the EEOC issued a probable cause determination, which found that defendant constructively discharged plaintiff and subjected him to a hostile work environment. Plaintiff received notice of right to sue from the EEOC on or about June 5, 2015.

Pursuant to this court's case management order, discovery commenced December 3, 2015, and concluded October 28, 2016. Defendant filed the instant partial motion for summary judgment on November 21, 2016, accompanied by a statement of material facts, appendix thereto, and memorandum of law. (DE 28–31). Defendant seeks summary judgment on plaintiff's claims for retaliation, constructive discharge, and intentional infliction of emotional distress, but not hostile work environment. Defendant relies on the depositions of employees Wayne Tarkington ("Tarkington"), William Buffkin ("Buffkin"), Lawerence McCall ("McCall"), and Kenneth Geer ("Geer"). Defendant also relies on plaintiff's deposition and the declaration of Gilbert Howell ("Howell").[1]

On December 15, 2016, plaintiff filed response in opposition to defendant's motion, accompanied by a statement of material facts, appendix thereto, and memorandum of law. (DE 33–35). In support of his position, plaintiff relies on the same employee depositions as defendant, as well as the depositions of employees Christina Atkinson ("Atkinson") and Wanda Smith ("Smith"),[2] and the depositions of his daughters, wife, and expert witness, Robert L. Goldstein, M.D. ("Dr. Goldstein"). Plaintiff also relies on excerpts from defendant's 2013 store handbook, his employee time records, resignation letter dated August 16, 2013, Atkinson's promotion and employee time records, medical reports and correspondence from his cardiologist, John S. Kelley,

---

[1] During plaintiff's employment with defendant, Tarkington served as general manager of Store 1260 and Geer served as district manager. (DE 1 ¶¶ 38, 50). At some point during plaintiff's employment, McCall replaced Tarkington as general manager of Store 1260. (Id. ¶ 41). Buffkin served as assistant manager of the "Do it Yourself" ("DIY") section of Store 1260. (Id. ¶ 35). Howell served as human resources manager. (DE 34 ¶ 40).

[2] Prior to her promotion, Atkinson worked as a sales clerk in the DIY section of Store 1260. (DE 1 ¶ 13). Smith served as the manager of commercial sales at Store 1260. (DE 1 ¶ 22).

2

M.D. ("Dr. Kelley"), and an audio recording of an August 2013 meeting plaintiff had with Smith and McCall.

Defendant filed a reply on January 11, 2017, accompanied by additional depositions and declarations. Over defendant's objection, the court allowed plaintiff to file sur-reply on January 25, 2017, for the purpose of addressing evidentiary issues first raised in defendant's reply. (See DE 47).

## STATEMENT OF FACTS

The facts summarized in the light most favorable to plaintiff are as follows. Defendant is a national retailer and distributor of automotive parts. Defendant has a written policy, which prohibits sexual harassment in the workplace. (DE 34 ¶ 1). The policy directs employees to report any issues, including issues involving alleged sexual harassment to their immediate supervisors. If an employee is not satisfied with his or her supervisor's response, the policy directs the employee to report his or her complaints to higher levels of management, human resources, or the company's corporate headquarters. (DE 35-6 at 3). Upon receipt of a sexual harassment complaint, defendant's policy requires management to "notify all appropriate individuals and make sure the situation is investigated." (Id. at 2).

In or around September 2012, defendant hired plaintiff as a part-time commercial driver in its Whiteville, North Carolina store ("Store 1260"). At that time, Tarkington was general manager of Store 1260. (DE 29 ¶ 4). Tarkington reported to district manager Geer. (Id. ¶ 5). As store manager, Tarkington was "in charge of everything under the four walls." (Id. ¶ 16). Tarkington had authority to discipline employees and make recommendations to the district manager regarding terminations and promotions. (Id. ¶ 17–18; DE 34 ¶¶ 17–18). At all relevant times herein, plaintiff reported directly to Smith, the commercial manager. (DE 29 ¶ 11; DE 34 ¶ 11).

3

At the time plaintiff applied for the position with defendant, he was teaching classes part-time at a local college, which he continued to do throughout the duration of his employment. (Id. ¶¶ 7, 10; DE 34 ¶ 10). As a part-time employee of defendant, plaintiff could limit his work availability to certain days or hours of the day in order to accommodate his teaching schedule. (DE 29 ¶ 19).

In or around March 2013, defendant hired Atkinson as a sales clerk in the DIY section of Store 1260. (DE 34 ¶ 26). According to plaintiff, "[a] few days after [Atkinson] started" working for defendant, she began sexually harassing plaintiff. (Id. ¶ 67). Atkinson frequently told "off-color jokes," made "sexually explicit" comments, and made inappropriate advances toward plaintiff. (Id. ¶ 68). For example, on one occasion Atkinson "walked by [plaintiff] and grabbed [him] by the nipple and twisted it until [he] had a bruise the size of a quarter." (Id. ¶ 75) (internal quotations omitted). Atkinson also often "felt [plaintiff's] behind[] and . . . groin." (Id. ¶ 35).

Shortly after Atkinson began harassing him, plaintiff complained to Smith about Atkinson's actions, including her "grabbing and twisting his nipple." (Id. ¶ 76). According to plaintiff, Smith "said nothing" in response to plaintiff's complaints. (Id.). The week following plaintiff's initial complaint to Smith, "Atkinson touched [plaintiff's] genitals." (Id. ¶ 77). Once again, plaintiff complained to Smith, informing her that Atkinson had touched him in the "groin area." (Id. ¶ 78). In spite of plaintiff's repeated complaints to Smith, Atkinson continued to make inappropriate advances towards plaintiff. (Id. ¶ 80–87). Approximately six to eight weeks after his first complaint to Smith, plaintiff told Tarkington about Atkinson's behavior. (Id. ¶ 35).[3] At that time,

---

[3] Plaintiff alleges that he first complained to Smith during the week of March 18, 2013. (DE 34 ¶ 90). Consequently, plaintiff's first complaint to Tarkington was sometime between the week of April 29 and May 13, 2103. (Id.). On May 19, 2013, Atkinson received the promotion for which plaintiff was non-selected. (Id. ¶ 92).

plaintiff told Tarkington that Atkinson often pinched his nipples and requested that Tarkington speak with Atkinson. (Id. ¶ 36).[4] According to plaintiff, Tarkington never spoke to Atkinson about the alleged harassment. (DE 34 ¶ 35)

In or around May 2013, a full-time driving position became available at Store 1260 when Jamison Buffkin quit.[5] (DE 34 ¶ 88). Plaintiff told Smith, his immediate supervisor, "that [he] would love . . . the full-time job." (Id. ¶ 88) (internal quotations omitted). In response, Smith allegedly said to plaintiff, "no, [you] complain too much." (Id.) (internal quotations omitted). Plaintiff did not ask Tarkington to be considered for the position. (DE 29 ¶ 23; DE 34 ¶ 23). On or about May 19, 2013, Atkinson was promoted to the full-time driver position. (DE 29 ¶ 27; DE 34 ¶ 27). Tarkington and Smith offered Atkinson the promotion. (DE 34 ¶ 27).

In July 2013, plaintiff complained to Tarkington about Atkinson's sexual harassment. (DE 34 ¶ 28). At that time, Tarkington informed Geer of plaintiff's complaints. (Id. ¶ 32). In response, Geer told Tarkington that "he would handle it." (DE 35-5 at 45:14). Sometime after plaintiff told Tarkington about Atkinson's behavior, plaintiff took a three-week vacation. (DE 34 ¶ 33).[6] After plaintiff returned to work, on August 15, 2013, Atkinson again grabbed and twisted plaintiff's nipple. (Id. ¶ 101). "Almost immediately after the assault, [p]laintiff told . . . McCall, that he wanted to speak with him and his immediate supervisor Smith." (Id. ¶ 102). Around six o'clock that evening, McCall and Smith met and spoke with plaintiff. (Id. ¶ 103).

---

[4]Defendant disputes that Tarkington had knowledge of Atkinson's behavior prior to July 2013. (DE 29 ¶ 28).

[5] Jamison "Lane" Buffkin was employed as a full time driver at Store 1260.

[6]Sometime while plaintiff was on vacation, McCall replaced Tarkington as manager of Store 1260.

5

The next day, August 16, 2013, plaintiff spoke with Geer on the telephone. (Id. ¶ 107). At that time, plaintiff agreed to meet with Geer on August 19, 2013. (Id. ¶ 107). Notwithstanding the foregoing, plaintiff gave Smith a resignation letter on August 16, 2013. (Id. ¶ 108). When plaintiff met with Geer on August 19, 2013, Geer asked plaintiff if he would "come back to work until [the company] c[ould] investigate [his claims]." (DE 34 ¶¶ 47, 111). Geer "expressed [to plaintiff] a willingness to move . . . Atkinson to another store," and told McCall to move Atkinson to the company's Shallotte, North Carolina store pending investigation of plaintiff's complaints. (Id. ¶¶ 46, 48). As of August 19, 2013, defendant had not initiated any investigation into plaintiff's claims. (DE 34 ¶ 116; DE 35-18 at 40:3–22).

Atkinson's harassment caused plaintiff great anxiety and stress. (Id. ¶¶ 60–61). As a result of the stress he endured, plaintiff experienced chest pains, which forced him to seek emergency medical attention on September 15, 2013. (Id. ¶ 119). Thereafter, plaintiff's chest pains continued to worsen, causing him to undergo a heart catheterization on October 25, 2013. (Id. ¶ 120). Plaintiff's cardiologist, Dr. Kelley, allegedly told plaintiff that his "anxiety and . . . chest pains were stress related." (Id. ¶ 64; DE 35-21).[7]

## COURT'S DISCUSSION

A.      Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of demonstrating the absence

---

[7] For the first time in its reply, defendant objects to certain statements plaintiff's wife made to Dr. Kelley regarding the source of his stress. The court need not reach in this context defendant's objection to this testimony, where the court places no reliance herein on this evidence in deciding the instant motion.

of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate with specific evidence that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. Similarly, "[c]redibility determinations . . . are jury functions, not those of a judge." Id. at 255. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id.; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability . . . and it is the duty of the court to withdraw the case from the jury when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "a reasonable juror could reach only one conclusion based on the evidence," or when "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast,

7

when "the evidence as a whole is susceptible of more than one reasonable inference, a jury issue is created," and judgment as a matter of law should be denied. Id. at 489–90.

B.  Analysis

  1.  Retaliation

Plaintiff contends that defendant failed to promote him in retaliation for reporting Atkinson's of sexual harassment.

Title VII makes it unlawful for an employer to discriminate against any employee "because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge . . . under [Title VII]," 42 U.S.C. § 2000e-3(a). To state a claim for retaliation under Title VII, a plaintiff must demonstrate that "[]he engaged in a protected activity"; 2) "h[is] employer took an adverse action against h[im]"; and 3) that "a casual link between the two events" existed. Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 281 (4th Cir. 2015) (en banc). To demonstrate that he was subject to a materially adverse employment action, a plaintiff must show that the challenged action would have "dissuaded a reasonable worker from making or supporting a charge of discrimination [as a result of the action]." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006); see also Hoyle v. Freightliner, LLC, 650 F.3d 321, 337 (4th Cir. 2011) (internal quotations and citations omitted). Failure to promote an employee constitutes an adverse action under Title VII. See Hoyle, 650 F.3d at 337 (internal quotations omitted) ("An adverse action is one that constitutes a significant change in employment status, such as . . . failing to promote . . . .").

> To satisfy the third element, the employer must have taken the adverse employment action because the plaintiff engaged in protected activity. Since, by definition, an employer cannot take action because of a factor of which it is unaware, the

8

employer's knowledge that the plaintiff engaged in protected activity is absolutely necessary to establish the third element of the prima facie case.

Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998). The relevant decision maker must be aware of the protected activity. See Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 501 (4th Cir. 2005).

Here, there is no dispute that plaintiff engaged in protected activity when he reported Atkinson's sexual harassment to Smith and Tarkington. (See DE 31 at 2–3). Therefore, to survive summary judgment, plaintiff must establish that defendant took an adverse action against him and that a causal connection exists between the protected activity and the adverse action. See Anderson, 477 U.S. at 248 (holding that summary judgment is appropriate "if the evidence is such that a reasonable jury could [not] return a verdict for the nonmoving party"); see also Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985).

Defendant first contends that summary judgment on plaintiff's retaliation claim is proper, because the relevant decision maker had no knowledge of plaintiff's allegations of harassment at the time plaintiff was denied a promotion. Viewing the facts in the light most favorable to him, plaintiff has created a genuine issue of material fact with respect to his retaliation claim. At the time plaintiff was denied the promotion in May 2013, Smith and Tarkington both had knowledge of plaintiff's allegations of harassment. (DE 34 ¶ 8). Furthermore, according to plaintiff, Smith had authority to promote employees. (DE 34 ¶ 13).[8] When plaintiff informed Smith that he wanted to be considered for the promotion, Smith responded, "no, [you] complain too much." (DE 34 ¶ 88)

---

[8]Defendant contends that Smith did not have authority to promote employees, and that only district manager Geer could make promotion decisions. (DE 29 ¶¶ 13, 17–18). Viewing the facts in the light most favorable to plaintiff, a genuine issue of material fact exists regarding whether or not Smith had authority to promote employees.

9

(internal quotations omitted). From this evidence, a reasonable juror could infer that Smith was a "relevant decisionmaker," with respect to the promotion decision.

Furthermore, it is undisputed that Tarkington had authority to recommend promotions to district manager Geer. (DE 29 ¶¶ 17–18; DE 34 ¶¶ 17–18). Although Geer allegedly made the promotion decision, (DE 30-5 ¶ 3), since Smith and Tarkington communicated the promotion decision to Atkinson, (DE 34 ¶ 27), a reasonable juror could infer that Tarkington made a recommendation regarding the promotion in this instance. If Tarkington made such a recommendation in this instance, the jury could also find him to be a "relevant decisionmaker" with respect to the promotion decision.

Where plaintiff creates a genuine issue of material fact regarding whether or not "relevant decisionmakers" were aware of plaintiff's protected activity prior to the time he was denied the promotion, plaintiff's retaliation claim must proceed. See Constantine, 411 F.3d at 501. Accordingly, the court denies defendant's motion for summary judgment on plaintiff's retaliation claim. Finding summary judgment improper on this basis, the court need not address the parties' additional arguments.

2. Constructive Discharge

"[I]t is well-established that an employee is entitled to relief under Title VII even absent a formal discharge." Martin v. Cavalier Hotel Corp., 48 F.3d 1343, 1354 (4th Cir. 1995). To establish a claim for constructive discharge, a plaintiff must provide sufficient evidence that his "employer deliberately ma[de] [his] working conditions intolerable in an effort to induce [him] to quit." Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 186–87 (4th Cir. 2004). Whether working conditions are intolerable "is determined from the objective perspective of a reasonable

person." Heiko v. Colombo Sav. Bank, F.S.B., 434 F.3d 249, 262 (4th Cir. 2006) (internal citations omitted). "Dissatisfaction with work assignments, . . . or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." Honor, 383 F.3d at 187 (internal quotations omitted). While Title VII protects an employee from a "calculated effort to pressure him into resignation through the imposition of unreasonably harsh conditions. . . . . [it does] not, however, guarantee[] [him] a working environment free of stress." Bristow v. The Dailey Press,, Inc., 770 F.2d 1251, 1255 (4th Cir. 1985).

To prove deliberateness, the "plaintiff must prove that the actions complained of were intended by the employer as an effort to force the employee to quit." Martin, 48 F.3d at 1354 (internal quotations omitted). Deliberateness "may be inferred through circumstantial evidence, including a failure to act in the face of known intolerable conditions." Bristow, 770 F.2d at 1255 (internal citations omitted).

In the instant case, evidence of record demonstrates that at the time plaintiff voluntarily resigned, neither Smith, McCall, or Geer intended plaintiff to quit. [9] At his deposition, McCall testified that defendant has "zero tolerance for any kind of harassment," and that him and Geer "made plans to take [Atkinson] out of the store until they could find out what was going on." (DE 35-3 at 20:1–11). At his deposition, plaintiff testified that he liked McCall and that McCall never told plaintiff that he wanted plaintiff to quit. (DE 30-3 at 208:17–18). DE 35-1 at 294:13–15).

---

[9] On August 15, 2013, plaintiff met with Smith and McCall to discuss Atkinson's harassment. (DE 34 ¶¶ 103–04). Plaintiff has produced an audio recording of the August 15, 2013 ("Exhibit K"). (See Ex. K, DE 36). For the first time in its reply, defendant objects to Exhibit K. Specifically, defendant argues that the recording is not authenticated properly and is inadmissible hearsay. (See DE 41 at n.1, 12). At this juncture, the court need not reach defendant's objection to Exhibit K, where the court places no reliance on it in deciding the instant motion.

Plaintiff also testified that he "didn't have any problems with [Smith]," and that Smith was good at "treating employees with respect and dignity." (DE 30-3 at 326:20–327:12).

On August 16, 2013, plaintiff spoke with district manager Geer on the telephone. (Id ¶ 107). At that time, Geer indicated to plaintiff that the company would be willing to move Atkinson to a different store. (Id.). Notwithstanding the foregoing conversation, later on August 16, 2013, plaintiff came into Store 1260 and handed Smith a resignation letter. (Id. ¶ 108). On August 19, 2013, and after plaintiff gave notice of his resignation, plaintiff met with Geer in person. (Id. ¶ 111). At the meeting, Geer told plaintiff that he wished plaintiff would come back to work. (DE 29 ¶ 54; DE 34 ¶ 54).[10]

Plaintiff contends that defendant's inaction following his first complaints to Smith beginning in March 2013 is sufficient to create a genuine issue of material fact regarding defendant's deliberateness. However, evidence of record does not establish that defendant intended plaintiff to quit. Plaintiff testified that he liked Smith and that she treated employees with respect and dignity. (DE 34 ¶ 14–15). With regard to Tarkington, Tarkington testified that he informed Geer of Atkinson's harassment and that he believed to have adequately addressed plaintiff's concerns. (DE 30-1 at 119:8–11). In August 2013, when plaintiff reported the harassment to McCall, McCall meet with plaintiff discuss his grievances. (DE 34 ¶¶ 103–04). Thereafter, plaintiff met with Geer, who indicated a desire to keep plaintiff as a company employee. (DE 29 ¶ 54; DE 34 ¶ 54). Based on the foregoing, plaintiff cannot establish that defendant "deliberately ma[de] [his] working conditions

---

[10]According to plaintiff, at the August 19 meeting, Geer also told plaintiff that he "should have been able to prevent [the sexual harassment[, and that it [was plaintiff's] fault because he didn't come to [Geer]." (DE 34 ¶ 12). However, such statement does not by itself establish that defendant intended plaintiff to resign. If anything, such statement tends to negate intent, by demonstrating that Geer lacked knowledge of the offensive conduct plaintiff was subjected to.

intolerable in an effort to induce [him] to quit." Martin, 48 F.3d at 1354 (internal quotations omitted). Consequently, the court grants defendant's motion for summary judgment on plaintiff's constructive discharge claim.

    3.        Intentional Infliction of Emotional Distress

Under North Carolina law, to allege prima facie case for intentional infliction of emotional distress ("IIED"), a plaintiff must set forth sufficient evidence to establish: "1) extreme and outrageous conduct by the defendant; 2) which is intended to and does in fact cause; 3) severe emotional distress." Waddle v. Sparks, 331 N.C. 73, 82 (1992). "The law interferes only where the distress inflicted is so severe that no reasonable man could be expected to endure it." Waddle, 331 N.C. at 84. "Severe emotional distress" means any emotional or mental disorder, including neurosis, psychosis, chronic depression or phobia, that may be generally recognized and diagnosed by trained professionals. Holloway v. Wachovia Bank & Trust Co., 339 N.C. 338, 354–55 (1994).

Where, as here, plaintiff's IIED claim is based upon acts of harassment committed by an employee of the defendant employer, there must be some basis for imputing the employee's actions to the employer. In cases involving sexual harassment, there are only three situations in which an employer may be liable for acts of its employee: "1) . . . the harassment was expressly authorized, 2). . . the harassment was in the scope of the employee's employment and in furtherance of the employer's business, and 3) . . . the harassment was ratified by the employer." Phillips v. Vassey, 113 N.C. App. 132, 135 (1993) (internal citations omitted).

An act is within the scope of employment if, "an employee, at the time of the incident, . . . act[s] in furtherance of the principal's business and for the purpose of accomplishing the duties of the employment." Medlin v. Bass, 327 N.C. 587, 593 (1990) (citing Troxler v. Charter Mandala

13

Center, 89 N.C. App. 270, 271 (1988)). "[I]ntentional torts are rarely considered to be within the scope of an employee's employment." Id. at 594 (internal quotations omitted ). "[I]f an assault is committed by the servant, not as a means or for the purpose of performing the work he was employed to do, but . . . to carry out an independent purpose of his own, then the master is not liable." Id. To show that an employer ratified acts of its employee, the plaintiff must establish "that the employer had knowledge of all material facts and circumstances relative to the wrongful act, and that the employer, by words or conduct, show[ed] an intention to ratify the act." Brown v. Burlington Indus., Inc., 93 N.C. 431, 437 (1989). An employer may ratify the acts of an employee by failing to act. Id. Furthermore, a claim for IIED may exist "where [the] defendant's actions indicate a reckless indifference to the likelihood that they will cause severe emotional distress." Dickens v. Puryear, 302 N.C. 437, 452 (1981). A supervisor's failure to prevent further sexual harassment may establish ratification. See Hogan v. Forsyth Country Club Co., 79 N.C. App. 483, 492 (1986); see also Jordan v. Campbell-Taggert, Inc., No. 87-3595, 1990 WL 51819, at *2-*3 (4th Cir. April 17, 1990).

As a preliminary matter, defendant argues that no basis exists to hold it liable for Atkinson's actions. First, there is no allegation that defendant expressly authorized the alleged harassment. Second, the alleged harassment was not within the scope of Atkinson's employment and/or in furtherance of defendant's business. Although Atkinson was working as an employee of defendant at the time the harassment occurred, the harassment "advance[s] no conceivable purpose of defendant . . . .[therefore,] his acts . . . were beyond the course and scope of his employment as a matter of law." Medlin, 327 N.C. at 594.

However, plaintiff has set forth sufficient evidence that defendant ratified Atkinson's harassment. Evidence of record shows that through Smith and Tarkington, defendant had knowledge of the alleged harassment. (DE 34 ¶ 90). Pursuant to company policy, both Smith and Tarkington were obligated to report plaintiff's complaints. (Id. ¶ 25). Plaintiff reported the harassment to Smith shortly after she began working for defendant in March 2013. (Id.). Smith did not report the alleged harassment to any of her supervisors. (Id. ¶ 76). Plaintiff also reported the harassment to Tarkington. Tarkington did not report the harassment to any of his supervisors until after plaintiff complained to Tarkington in July 2013. (Id. ¶ 90). The failure of Smith and Tarkington to report and/or to correct the alleged harassment is sufficient to create a genuine issue of material fact regarding whether defendant ratified Atkinson's harassing behavior.[11] See Brown v. Burlington Indus., Inc., 93 N.C. App. 431, 437–38 (1989) (citing Hogan, 79 N.C. App. at 492) (finding manager's failure "to report sexual misconduct to higher authorities," in accordance with company policy to be " a course of conduct which a jury could conclude reasonably tends to show ratification."); see also Jordan, 1990 WL 51819, at *2-*3 (internal citations omitted) ("[F]ailure to intervene to prevent further offensive conduct . . . [is] sufficient to create a jury question on the issue of ratification.").

Relying on Phelps. v. Vassey, 113 N.C. App. 132 (1993) and Phillips v. J.P. Stevens & Co., Inc., No. 3:92-CV-00094, 1995 WL 794200 (M.D.N.C. May 1, 1995), defendant argues that to show it ratified Atkinson's harassing behavior, plaintiff needed to report the harassment "to a supervisor who has authority to fire or discipline [Atkinson]." (DE 31 at 8). Contrary to defendant's

---

[11]Although defendant's company policies direct dissatisfied employees to report complaints higher up the management chain, plaintiff has provided sufficient evidence to raise a genuine issue of material dispute regarding ratification of Atkinson's conduct.

suggestion, Phelps and Phillips, an unpublished decision, stand for the proposition that "[r]atification may only occur where a supervisor of the alleged harasser has knowledge of the wrongful conduct." Phillips, at *14 (citing Phelps, 113 N.C. App. at 437). In both Phelps and Phillips, the courts found insufficient evidence to charge the respective defendants with knowledge, where the alleged harassers were superior to the supervisors whom the plaintiffs reported the alleged harassment to. Unlike Phillips and Phelps, here, plaintiff reported the harassment to Tarkington, who had authority to discipline Atkinson.[12] After plaintiff first reported Atkinson's harassment to Tarkington, Tarkington did not discipline her. Accordingly, a genuine issue of material fact exists regarding defendant's ratification of Atkinson's alleged harassment.

Turning to the merits of plaintiff's IIED claim, Atkinson's conduct is extreme and outrageous. Conduct is "extreme and outrageous" if it "exceeds all bounds of decency tolerated by society" and is "regarded as atrocious, and utterly intolerable in a civilized community." Turner v. Thomas, 369 N.C. 419, 446 (2016) (internal quotations omitted). Here, Atkinson allegedly repeatedly pinched plaintiff's nipples, touched his behind and felt his groin. (DE 34, ¶ 35). Atkinson also made offensive and sexually charged remarks to plaintiff. (Id. ¶ 87). This conduct is extreme and outrageous. See e.g., Moody-Williams v. Liposcience, 953 F. Supp. 2d 677, (E.D.N.C. 2013) ("[C]laims of IIED based upon sexual harassment generally include a combination of explicitly obscene language, sexual advances, and/or sexual touching.") (internal citations omitted); see also Gutherie v. Conroy, 152 N.C. App. 15, 23 (2002) (collecting cases) ("[C]laims of IIED based upon sexual harassment generally have included . . . explicitly obscene or "X rated"

---

[12]Defendant contends that in July 2013, "[w]hen [p]laintiff complained to . . . Tarkington [,] . . . Tarkington acted promptly and believed he had resolved the situation." However, plaintiff has provided evidence that he complained to Tarkington as early as April 2013. Viewing the facts in the light most favorable to plaintiff, a genuine issue of material fact exists as to when Tarkington first learned of the alleged harassment.

language[,] sexual advances towards plaintiff, or[] defendant either touching plaintiff's private areas . . .").

Furthermore, viewing the facts in the light most favorable to him, plaintiff has established that Atkinson's conduct caused him stress and anxiety. (DE 35-21; DE 35-22). As a result of this stress, plaintiff sought medical attention for chest pains. (DE 35-20; DE 35-21). Defendant contends that plaintiff's failure to seek treatment for emotional distress while he was employed with defendant necessarily means that "he cannot establish the requisite level of 'severe' emotional distress to support is IIED claim." (DE 31 at 9). However, North Carolina law does not require diagnosis by a medical professional to establish a claim for IIED. See Johnson v. Ruark Obstetrics, 327 N.C. 283, 300 (1990) ("Proof of severe emotional distress does not require medical expert testimony"); see also Coffman v. Roberson, 153 N.C. App. 618, 627–28 (2002). These facts are sufficient to sustain plaintiff's IIED claim. Accordingly, the court denies defendant's motion for summary judgment on plaintiff's IIED claim.

## CONCLUSION

Based on the foregoing, the court GRANTS IN PART and DENIES IN PART defendant's partial motion for summary judgment. (DE 28). Plaintiff's constructive discharge claim is DISMISSED. Plaintiff's claims for retaliation, intentional infliction of emotional distress and hostile working environment are allowed to proceed. The parties are DIRECTED to confer and file within **21 days** from date of entry of this order a joint status report specifying three preferred alternative dates for trial and estimated trial length. Upon receipt of the parties report, the court will enter such further order as is warranted regarding pretrial and trial scheduling.

SO ORDERED, this the 5th day of September, 2017.

_____
LOUISE W. FLANAGAN
United States District Judge